J. NORTON PICKETT AND VIVIAN J. PICKETT, HUSBAND AND WIFE; JOHN C. BROOK AND ALICE M. BROOK, HUSBAND AND WIFE; OLD STONE MORTGAGE CORPORATION, A WASHINGTON CORPORATION; TIMOTHY P. REGAN AND KATHLEEN M. REGAN, HUSBAND AND WIFE; PRIMERIT FEDERAL SAVINGS BANK; ROBERT TRICARICO AND FRANCES TRICARICO, HUSBAND AND WIFE; MOHAMMAD A. MIAN AND CRISTINA G. MIAN, HUSBAND AND WIFE; CHARLES E. BIRBA AND DONNA L. BIRBA, HUSBAND AND WIFE; RAYMOND B. COX AND DOLORES E. COX, HUSBAND AND WIFE; SALVADOR D. RIVERA; IMCO REALTY SERVICES, INC., A DELAWARE CORPORATION; THOMAS L. LANEY AND DONNA J. LANEY, HUSBAND AND WIFE; MERABANK; MYRON E. CARPENTER AND PATRICIA C. CARPENTER, HUSBAND AND WIFE; AND INTERWEST MORTGAGE, A NEVADA CORPORATION, APPELLANTS, *v.* COMANCHE CONSTRUCTION, INC., A NEVADA CORPORATION, RESPONDENT.

No. 22246

July 2, 1992                                        836 P.2d 42

*Bible, Hoy, Miller, Trachok & Wadhams; Terrill R. Dory;* and *Michael Hoy,* Reno, for Appellants.

*George R. Carter,* Las Vegas, for Respondent.

424

**OPINION**

*Per Curiam:*

Appellants ("homeowners") brought this independent action to set aside a default judgment ("Comanche Judgment") in favor of respondent Comanche Construction, Inc. ("Comanche"). The Comanche Judgment foreclosed mechanic's liens against homeowners' properties notwithstanding the fact that homeowners had not been parties to the proceedings. In this independent action to set aside the Comanche Judgment, the trial court concluded: (1) that the default judgment was res judicata on issues raised by the homeowners; (2) that sums awarded under the default judgment to Comanche should be allocated among the homeowners; and (3) that the preliminary injunction against the sale of the homeowners' properties to satisfy the liens should be lifted. For the reasons discussed below, we reverse the district court's order.

*Facts*

In October, 1986, Comanche filed twelve mechanic's liens on homeowners' lots in the Shenandoah Heights subdivision, a 101-lot project, for labor and materials. Each lien was originally for $12,763. W.R. Tipple ("Tipple")[1] sued Comanche for a declaration that the liens were invalid, and Comanche counterclaimed, requesting foreclosure of its liens and seeking punitive damages for fraud. (This is the action that eventually resulted in the Comanche Judgment.)

Before the Comanche Judgment was entered, Tipple filed for bankruptcy. Although duly noticed, neither Tipple nor the bankruptcy trustee appeared at trial. The homeowners were not named as parties in the action between Tipple and Comanche. In May 1990, the court entered the Comanche Judgment, wherein it (1) dismissed Tipple's complaint, (2) awarded Comanche damages, (3) declared the mechanic's liens foreclosed, and (4) ordered "that all of said lands and premises be sold."

---

[1]Tipple is the owner of W. Russell Tipple & Associates, the developer of the Shenandoah Heights subdivision.

The homeowners state that they first learned of the Comanche Judgment in late June 1990, when Comanche's counsel advised several of the homeowners of Comanche's intention to begin foreclosure of their properties.

Thereafter, the homeowners filed the present action ("Homeowners' Action") to set aside the Comanche Judgment and moved for a preliminary injunction enjoining any foreclosure proceedings. The homeowners alleged: (1) that they did not have actual notice of the action involving Tipple and Comanche until after judgment was entered; (2) that the validity of the liens was never litigated (because of Tipple's default); and (3) that the homeowners were necessary parties who had not been joined.

Judge Griffin issued an injunction (a foreclosure sale was pending) subject to the homeowners posting a $631,525.30 bond. The homeowners posted the bond, and Comanche moved to allocate the sums due under the Comanche Judgment.

At the hearing on allocation, Comanche argued that because Tipple absconded with the relevant records, a precise allocation according to the actual work done was impossible and that, consequently, the judgment should be allocated on a per square footage basis of the eleven properties.[2] The homeowners argued that the Comanche Judgment was inflated in that it included work performed on lots other than the twelve that were liened. They argued that the specific properties liened could only be subjected to a charge that was specifically tied to work actually performed on each property. Following the hearing, Judge Griffin continued the matter and advised Comanche to file a motion in Judge Fondi's department to clarify the Comanche Judgment.

Thereafter, Comanche filed a "motion for nunc pro tunc clarification of judgment pursuant to NRCP 60(a)" in the Comanche Judgment with Judge Fondi. The homeowners were not parties to this proceeding. Comanche raised two questions for clarification: (1) whether the court intended Comanche's lien to be against the entire project or only against the twelve properties listed in Comanche's counterclaim, and (2) whether the judgment should be apportioned equally against the twelve properties.

Pursuant to the motion, Judge Fondi ordered that the Comanche Judgment be apportioned equally among the properties subject to the mechanic's liens. Adopting Judge Fondi's allocation, Judge Griffin reduced the Comanche Judgment by $1/12$ leaving the remaining $11/12$ of the Comanche Judgment as a claim against the eleven remaining lots.

---

[2]Originally, Comanche had liens on twelve properties, but one of the lots was foreclosed by a secured lender after commencement of the action between Tipple and Comanche, but before pronouncement of the Comanche Judgment.

Judge Griffin also found that the Comanche Judgment signed by Judge Fondi was res judicata on the same issues in the Homeowners' Action. The court ordered that each of the eleven lots be charged with $40,474.60 and dissolved the preliminary injunction.

We now address the homeowners' contention on appeal that the district court erred because: (1) the Homeowners' Action was not barred by the doctrine of res judicata; (2) the Comanche Judgment was void, because the trial court substantially changed the judgment more than six months after it was originally entered; (3) Comanche failed to join necessary parties in the foreclosure proceedings; and (4) the Comanche Judgment was improperly allocated.

## Discussion

A preliminary injunction may be issued to preserve the status quo if the party seeking it shows: (1) that the party enjoys a reasonable "likelihood of success" on the merits; and (2) the party will be subjected to "irreparable harm." Dixon v. Thatcher, 103 Nev. 414, 415, 742 P.2d 1029, 1029 (1987). We conclude that if Comanche were allowed to sell the liened properties, the homeowners would be subjected to irreparable harm and that compensatory damages would be inadequate. Whether the homeowners enjoy a reasonable likelihood of success in setting aside the Comanche Judgment requires a determination of the issues discussed below.

### Res judicata's applicability to the Homeowners' Action

Whether a party's claim is barred by res judicata presents a legal question. Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp., 933 F.2d 724, 725 (9th Cir. 1991); Cole v. Kunzler, 768 P.2d 815, 818 (Idaho Ct.App. 1989); Smith v. Smith, 793 P.2d 407, 409 (Utah App. 1990).

Although the district court ruled that the Comanche Judgment was res judicata as to the same issues in the Homeowners' Action, the homeowners correctly argue that because they had not been parties, res judicata does not preclude an independent action to set aside a prior judgment.

NRCP 60(b) provides two methods for obtaining relief from a final judgment: either by motion or by independent action. Nevada Indus. Dev. v. Benedetti, 103 Nev. 360, 364, 741 P.2d 802, 805 (1987). When the statutory period to obtain relief from

a judgment by motion has expired, an independent action may be brought to modify a prior judgment. *Id.* at 363; *see also* Amie v. Amie, 106 Nev. 541, 542, 796 P.2d 233, 234 (1990) ("The right to bring an independent action for equitable relief is not necessarily barred by res judicata.").

Comanche argues that *Benedetti* is distinguishable from the instant case because the homeowners were never parties to the first action and because this is not a case of mutual mistake.[3] First, while equitable relief from a judgment is generally given only to the parties to the action or those in privity, relief may be granted to one who is not a party to the judgment if he demonstrates that he is directly injured or jeopardized by the judgment. 49 C.J.S. *Judgments* § 344 (1947); Lieberman v. Aetna Ins. Co., 57 Cal.Rptr. 453, 458 (Ct.App. 1967). Because the Comanche Judgment subjected the homeowners (who were not parties) to liability, we conclude that they properly brought this equitable independent action.

Second, *Benedetti* is not limited to cases of "mutual mistake." If any of the grounds set forth in Rule 60(b) are shown, the purposes of res judicata can be outweighed by the policies for granting relief. *See, e.g.,* Carr v. District of Columbia, 543 F.2d 917 (D.C.Cir. 1976) (independent action was properly based on newly discovered evidence); *see also* Filler v. Richland County, 806 P.2d 537 (Mont. 1991) (pursuant to Rule 60(b), trial court may entertain independent action to set aside a judgment for extrinsic fraud). Moreover, in *Amie,* although appellant "arguably" sought relief for mutual mistake, our emphasis was on whether the equitable action violated the policies and purposes of the doctrine of res judicata. *Amie,* 106 Nev. at 541, 796 P.2d at 234-35.

We conclude that the Comanche Judgment is not res judicata to the Homeowners' Action.

*Alteration to the Comanche Judgment*

The homeowners argue that Judge Fondi made substantive changes to the Comanche Judgment more than six months after it was entered and that the judgment is therefore void. Comanche

---

[3]Comanche also argues that the Homeowners' Action is barred by the applicable statute of limitations. Because this issue was not raised below, we will not address it for the first time on appeal. *See* Young Elec. Sign Co. v. Erwin Elec. Co., 86 Nev. 822, 477 P.2d 864 (1970).

argues that Judge Fondi only corrected a clerical error pursuant to NRCP 60(a).

Clerical mistakes in judgments may be corrected by the district court at any time, NRCP 60(a); whereas, the district court can substantively alter a judgment only within six months after the judgment was entered.[4] NRCP 60(b). We have previously defined the type of alterations contemplated by NRCP 60(a), as stated:

> [A] clerical error is a mistake in writing or copying. As more specifically applied to judgments and decrees a clerical error is a mistake or omission by a clerk, counsel, or judge, or printer *which is not the result of the exercise of a judicial function.* In other words, a clerical error is one which *cannot reasonably be attributed to the exercise of judicial consideration or discretion.*

Channel 13 of Las Vegas v. Ettlinger, 94 Nev. 578, 580, 583 P.2d 1085, 1086 (1978) (quoting Marble v. Wright, 77 Nev. 244, 248, 362 P.2d 265, 267 (1961)) (emphasis in original).

While the original Comanche Judgment merely foreclosed the twelve liens, the altered Comanche Judgment set forth the allocation of the sums due Comanche. The allocation identified the sum necessary to satisfy each lot liened. Judge Fondi's failure to allocate the original Comanche Judgment did not involve a clerical error, for the omission was attributable to "judicial consideration or discretion." *Id.* Because the substantive change was made more than six months after the original judgment was entered, the Comanche Judgment as corrected was void. *See* Dredge Corp. v. Peccole, 89 Nev. 26, 27, 505 P.2d 290, 291 (1973) ("[T]he lower court was without jurisdiction to alter the judgment dismissing appellant's action 'without prejudice,' and its later order purporting to do so was void.").

### *Failure to join necessary parties*

The homeowners next contend that Comanche erred when it failed to join them as necessary parties. We agree. In Mendenhall v. Douglas L. Cooper, Inc., 387 S.E.2d 468 (Va. 1990), the contractors recorded mechanic's liens after the developer had sold several condominiums. *Id.* at 469. The contractors did not name the purchasers of the liened properties as parties within the requisite time to foreclose the mechanic's liens. *Id.* at 469-70. The Virginia Supreme Court held that the purchasers were necessary parties to the foreclosure action because they had an interest

---

[4]The Comanche Judgment was entered on May 15, 1990. The Comanche Judgment as altered by Judge Fondi was entered on May 16, 1991.

in the subject matter which could be diminished or defeated by the action. *Id.* at 470.

Comanche seeks to distinguish *Mendenhall* in that the unnamed property owners there obtained title before the mechanic's liens were recorded. Comanche, however, does not draw our attention to anything which undermines the holding in *Mendenhall.*

Comanche also argues that in some of the jurisdictions that are in accord with *Mendenhall,* the lien statutes require joinder of all parties with an interest in the liened land at the time of the foreclosure action. *See* Martirano Constr. Corp. v. Briar Contracting Corp., 481 N.Y.S.2d 105 (N.Y.App.Div. 1984); Vaughn v. State, 304 So.2d 12 (Ala. 1974).

Idaho, like Nevada, does not have a mechanic's lien statute which expressly requires joinder of all parties with an interest at the time of foreclosure. The Idaho Court of Appeals nevertheless held that a judgment of foreclosure that fails to name all parties with an interest results in loss of the lien against that interest, noting that this holding encourages judicial efficiency and finality of litigation. Bonner Bldg. Supply, Inc. v. Standard Forest Prods. Inc., 682 P.2d 635, 639 (Idaho Ct.App. 1984). The court discussed the implications of holding otherwise:

> If I.C. § 45-1302 [the lien statute] were applied so as to terminate the rights of other parties having an interest in the property, where they were not named in a lien foreclosure action simply at the election of the foreclosing claimant, issues of a constitutional dimension could arise. In such a case, holders of other recorded interests in the property could be deprived without notice and opportunity to be heard—a deprivation of due process.

*Id.*

In Packard Bell Elecs. Corp. v. Theseus, Inc., 53 Cal.Rptr. 300 (Ct.App. 1966), the lien claimant failed to name the owners of six lots who took their title after recordation of the mechanic's lien but before commencement of the action to foreclose the lien. *Id.* at 302. The court held that because the owners of the six lots were not named in the foreclosure proceeding, giving them an opportunity to contest the amount, validity and priority of the claimed lien, the mechanic's lien as to those owners was not valid. *Id.* at 303. *See also* Monterey S.P. Part. v. W.L. Bangham, 777 P.2d 623, 626 (Cal. 1989) (all persons with an interest in the subject real property at the time suit is brought to enforce a mechanic's lien on that property are necessary parties); Eng v. Stein, 599 P.2d 796, 799 (Ariz. 1979).

We conclude that the cases supporting the homeowners' position are persuasive. Therefore, we hold that an owner of an interest in real property subject to a mechanic's lien when a judicial foreclosure proceeding is commenced is a necessary party. Failure to name a necessary party leaves that property owner's interest unaffected by the foreclosure.

## Apportionment of the Comanche Judgment

Finally, the homeowners argue that the Comanche Judgment was improperly allocated. They contend that Comanche worked on forty-nine parcels and that only $41,559.38 of the $391,006.52 Comanche Judgment was attributable to the twelve parcels it liened.[5] In apportionment, a property subject to a mechanic's lien should not be responsible for the improvement costs of another property. Brunzell v. Lawyers Title, 101 Nev. 395, 397, 705 P.2d 642, 644 (1985). Thus the apportionment must be adjudicated on the merits to determine the appropriate charge attributable to each individual property.

## Conclusion

In sum, the district court abused its discretion in dissolving the preliminary injunction. The homeowners demonstrated a probability of irreparable harm and a reasonable likelihood of success on the merits in that the Homeowners' Action was not precluded by the doctrine of res judicata in seeking relief, that the Comanche Judgment as corrected was void, and that the Comanche Judgment was improperly apportioned.

Accordingly, we reverse the district court's order granting Comanche allocation of the sums due under the Comanche Judgment and dissolving the preliminary injunction, vacate the Comanche Judgment and remand this matter for further proceedings consistent with this opinion.

---

[5]The homeowners rely on Comanche's unpaid work vouchers, arguing that these demonstrate that Tipple did not pay Comanche for work performed on over forty units and that only $41,559.38 is attributable to the twelve lots liened. In addition, one of the lots Comanche liened is vacant, and it appears that there are no outstanding vouchers for this lot.